UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


BEATRICE ESQUIVEL ANDRINI,

     Plaintiff,

v.                          CASE No. 8:19-cv-3146-TGW

ANDREW SAUL,
Commissioner of Social Security,

     Defendant.

_____


## O R D E R

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1]   Because the Commissioner of Social Security did not give a sufficient explanation for rejecting the opinion of a treating physician, the Commissioner's decision will be reversed, and the matter remanded for further proceedings.

---

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 11).

I.

The plaintiff, who was fifty-one years old at the time of the administrative hearing and who has a high school education, has worked as a cashier checker; dispatcher; collector; order, hotel and personnel clerk; and cook helper (Tr. 34-35, 48, 320). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to hypothyroidism; neuropathy; depression; numbness in cheeks, hands, and feet; cognitive and visual impairments; lupus; fibromyalgia; pinched nerves; migraines and anxiety (Tr. 77).[2] The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of "lupus, fibromyalgia, rheumatoid arthritis, cervical and lumbar disc displacement, migraines, obesity, depression and an anxiety disorder" (Tr. 19). She found further (Tr. 24):

---

[2]The plaintiff amended her disability onset date from May 1, 2010 to November 14, 2014 (Tr. 294).

> [T]he claimant has the residual functional capacity
> to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) except she can never
> climb ladders, ropes or scaffolds and can
> occasionally climb ramps and stairs.  She must
> avoid all exposure to hazards such as unprotected
> heights.  She can perform simple work with
> occasional interactions with supervisors,
> coworkers and the general public.  She would be
> off-task 10% of the time.

The law judge concluded that, with these limitations, the plaintiff is unable

to perform any past relevant work (Tr. 34).  However, based on the

testimony of the vocational expert, she determined that other jobs exist in

significant numbers in the national economy that the plaintiff could perform,

such as a routing clerk, photo copying machine operator, and assembler of

electrical accessories I (Tr. 35–36).  Accordingly, the law judge ruled that

the plaintiff was not disabled (id.).  The Appeals Council let the decision of

the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and

supplemental security income, a claimant must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical

-3-

or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). In this case, the plaintiff must show that she became disabled before her insured status expired on September 30, 2015, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979). There is not a similar requirement for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be

-4-

reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff asserts two challenges to the law judge's decision (Doc. 13). She argues that "the decision does not offer good cause for giving little weight to the opinion of Plaintiff's treating physician, Dr. [Isabel] Hidalgo" and that "there is an unresolved inconsistency between the Vocational Expert's testimony and the Dictionary of Occupational Titles" (id., p. 1). The first contention is meritorious.

A.   The first argument focuses on the law judge's rejection of Dr. Hidalgo's opinions in light of the plaintiff's fibromyalgia diagnosis. The plaintiff was diagnosed with fibromyalgia by Dr. Hidalgo, as well as rheumatologist Dr. Roberto Pancarbo and internist Dr. Chen Yih Chang Lin (Tr. 1173, 1180, 1183; Tr. 735, 743). Importantly, the law judge found that the plaintiff suffers from fibromyalgia, and that it is a severe impairment (Tr. 19).

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the

-6-

evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. <u>Lewis</u> v. <u>Callahan</u>, 125 F.3d 1436, 1440 (11th Cir.1997).

Dr. Hidalgo, who is the plaintiff's primary care physician, opined in a Residual Functional Capacity Questionnaire dated October 22, 2018, that the plaintiff had disabling functional limitations due to several conditions, including fibromyalgia (Tr. 1167–70).[3]   Thus, Dr. Hidalgo opined that the plaintiff could sit and stand/walk for only one hour each during an eight-hour workday, could not carry more than 10 pounds, and would need to take unscheduled breaks and lie down during the day (Tr. 1167–68).   Additionally, Dr. Hidalgo opined that the plaintiff would be absent one to two days monthly, and that the plaintiff's symptoms would interfere with her attention and concentration (Tr. 785, 1168).

The law judge acknowledged Dr. Hidalgo's treatment of the plaintiff and recounted Dr. Hidalgo's opinions in detail (Tr. 33).   The law

_____

[3] Dr. Hidalgo opined similar functional limitations in two other Residual Functional Capacity Questionnaires and another Medical Opinion Form (<u>see</u> Tr. 784, 1148, 1158).

judge gave Dr. Hidalgo's opinions of the plaintiff's functional capacity "very little weight" (id.).    The law judge stated (citations omitted):

> The undersigned gives these opinions very little weight as they are inconsistent with Dr. Hidalgo's treatment notes, which generally documented normal examinations. Additionally, these opinions are inconsistent with findings throughout the relevant period showing the claimant walked with a normal gait, performed a full squat, and exhibited normal range of motion, grip strength, muscle strength, deep tendon reflexes and sensation in her extremities.   These opinions are also inconsistent with findings showing the claimant was alert, oriented, and cooperative on examinations with goal oriented thoughts.

The plaintiff argues that the law judge's explanation does not provide good cause for discounting Dr. Hidalgo's opinions of functional limitations caused by fibromyalgia.    Specifically, she contends (Doc. 13, p. 16):

> [T]he ALJ erred by focusing on the objective physical findings because one of Plaintiff's most serious impairments is fibromyalgia.   (See, e.g., Tr. 548, 552).    Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."    Social Security Ruling ("SSR") 12-2P, 2012 WL 3104869, at *2 (S.S.A. 2012).

> The Eleventh Circuit has noted that one of the
> "hallmarks" of fibromyalgia is a lack of objective
> medical findings.  *Moore v. Barnhart,* 405 F.3d
> 1208, 1211 (11th Cir. 2005).

The plaintiff is correct that the law judge may not rely primarily on a lack of

objective medical findings to discount an opinion of functional limitations

due to fibromyalgia.

As explained in Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.

1996):

> [Fibromyalgia's] cause or causes are unknown,
> there is no cure, and, of greatest importance to
> disability law, its symptoms are entirely
> subjective. There are no laboratory tests for the
> presence or severity of fibromyalgia. The principal
> symptoms are "pain all over," fatigue, disturbed
> sleep, stiffness, and-the only symptom that
> discriminates between it and other diseases of a
> rheumatic character-multiple tender spots, more
> precisely 18 fixed locations on the body (and the
> rule of thumb is that the patient must have at least
> 11 of them to be diagnosed as having
> fibromyalgia) that when pressed firmly cause the
> patient to flinch.

See, e.g., Green-Younger v. Barnhart, 335 F.3d 99, 108–09 (2nd Cir. 2003)

("[P]hysical examinations will usually yield normal results—a full range of

motion, no joint swelling, as well as normal muscle strength and neurological

reactions."); <u>Preston</u> v. <u>Secretary of Health and Human Services</u>, 854 F.2d 815, 820 (6th Cir. 1988) (Fibromyalgia patients "manifest normal muscle strength and neurological reactions and have a full range of motion.").

Consequently, the Eleventh Circuit held in <u>Somogy</u> v. <u>Commissioner of Social Security</u>, 366 Fed. Appx. 56, 64 (11th Cir. 2010):

> The lack of objective clinical findings is, at least in the case of fibromyalgia, therefore insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations. *See Green–Younger*, 335 F.3d at 105–08 (holding that because fibromyalgia is "a disease that eludes [objective] measurement," ALJ improperly discredited treating physician's disability determination based upon lack of objective evidence).

Therefore, in view of these characteristics of fibromyalgia, Dr. Hidalgo's opinions cannot be discounted because medical records did not reflect objective medical findings.   <u>Moore</u> v. <u>Barnhart</u>, <u>supra</u>, 405 F.3d at 1211; <u>Somogy</u> v. <u>Commissioner of Social Security</u>, <u>supra</u>, 366 Fed. Appx. at 64; <u>Enright</u> v. <u>Astrue</u>, Case No. 8:02-cv-1225-TGW, 2008 WL 476670 at *4 (Feb. 29, 2008).

However, that is what the law judge did in this case. The law judge relied upon the lack of objective findings as an omnibus explanation for discounting Dr. Hildago's opinions, regardless of the underlying cause. Most significantly, there is no indication that the law judge recognized the distinctive characteristics of fibromyalgia. Therefore, there is no basis for concluding that the law judge even considered that limitations due to fibromyalgia may not be rejected due to a lack of objective abnormalities.[4]

Importantly, moreover, the Commissioner has not responded to this argument (see Doc. 14, pp. 6–7). The Commissioner identifies in his opposition substantial evidence supporting the law judge's finding that the objective testing was essentially normal, and he asserts that this is "a legitimate reason for discounting Dr. Hidalgo's opinions" (id., p. 6). This response fails to acknowledge the unique characteristics of fibromyalgia and

---

[4]The law judge's discussion of the medical records also appears to be deficient in this respect. Thus, she appears to minimize the significance of medical records reflecting multiple tender points, a distinct symptom of fibromyalgia, based on normal objective findings. For example, the law judge states that "[e]xaminations in May 2017 and June 2017 documented multiple tender points .... However, she also displayed normal memory, motor strength, sensation and deep tendon reflexes" (Tr. 29) (citations omitted). The law judge also noted that "[t]reatment notes from September 2015 documented multiple tender points, although she continued to exhibit normal range of motion in all joints" (Tr. 28) (citation omitted).

does not refute the plaintiff's meritorious argument that the law judge may not rely upon a lack of objective medical abnormalities to discount the treating physician's opinion of functional limitations caused by fibromyalgia.

In sum, there is no indication that the law judge took into consideration when evaluating Dr. Hildago's opinions that the hallmark of fibromyalgia is the lack of objective findings.   To the contrary, the law judge thought that the lack of objective findings supported a rejection of Dr. Hidalgo's opinions.   Consequently, because the law judge did not consider the unique characteristics of fibromyalgia in rejecting Dr. Hidalgo's limitations that were partly based on the plaintiff's fibromyalgia condition, the law judge did not provide good cause for discounting Dr. Hidalgo's opinions. This conclusion warrants a reversal and a remand.

On the other hand, <u>Moore</u> v. <u>Barnhart</u>, <u>supra</u>, shows that the Commissioner on remand is not bound to find the plaintiff disabled simply because she has been diagnosed with fibromyalgia. Rather, the Commissioner has to take into consideration the impairment's lack of

objective findings when evaluating medical opinions and making credibility determinations.

B.    The plaintiff's second argument is that "there is an unresolved conflict between the Vocational Expert's testimony and the Dictionary of Occupational Titles" that requires reversal of the Commissioner's decision (Doc. 3, p. 1). This contention is appropriately pretermitted because upon remand a new decision will be issued.

It is, therefore, upon consideration

ORDERED:

That the Commissioner's decision is hereby **REVERSED** and the matter remanded for further proceedings.    The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 26th day of February, 2021.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE